UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEORGIA H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

19-CV-6904-LJV
DECISION & ORDER

---

On December 13, 2019, the plaintiff, Georgia H. ("Georgia"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] Docket Item 1. On May 18, 2020, Georgia moved for judgment on the pleadings, Docket Item 16; on August 10, 2020, the Commissioner responded and cross-moved for judgment

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Georgia applied for both Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Social Security Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

on the pleadings, Docket Item 19; and on August 31, 2020, Georgia replied, Docket Item 20.

For the reasons that follow, this Court grants Georgia's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Georgia argues that by "reject[ing] the only examining opinion" in the record and therefore relying on his own lay judgment, the ALJ erred in determining her residual functional capacity ("RFC"). *See* Docket Item 16-1. This Court agrees.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). An ALJ may not reject or discount the opinion of a medical professional unless other competent medical evidence in the record supports that decision. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). And an "ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources." *Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (citing *Balsamo,* 142 F.3d at 81).

"While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." *Balsamo*, 142 F.3d at 81. That is because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Dailey v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). As a general rule, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner "may not make

3

the connection himself." *Perkins v. Berryhill*, 2018 WL 3372964, at * 3 (W.D.N.Y. July 11, 2018) (internal marks omitted) (citing *Jermyn v. Colvin*, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination."). Only in limited circumstances, such as "when the medical evidence shows only minor physical impairments, [may] 'an ALJ permissibly . . .render a common[]sense judgment about functional capacity even without a physician's assessment.'" *Perkins*, 2018 WL 3372964, at * 3 (citing *Wilson*, 2015 WL 1003933, at *21).

Moreover, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)). In fact, "an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47). Thus, if a "transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations[, as a general rule,] the ALJ must recontact [an acceptable medical] source, order a consultative examination, or have a medical expert testify at the hearing." *Skupien v. Colvin*, 2014 WL 3533425, at *6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 913 (N.D. Oh. 2008)). "Indeed, the Commissioner's regulations indicate that the ALJ may recontact any 'medical source' where the evidence of record is incomplete or inconsistent, including where the

4

evidence is 'ambiguous.'"  *Scott v. Berryhill*, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018) (citing 20 C.F.R. § 404.1520b(b)(2)(i)).

Here, the ALJ disregarded several of these fundamental principles.  A brief summary of the medical evidence helps to explain that error.

In November 2015, an X-ray showed "[m]ild degenerative changes" to Georgia's back.  Docket Item 13-7 at 76.  About four months later, Georgia went to the emergency room complaining of back pain and was diagnosed with "[l]umbar pain with radiation down [her] right leg."  *Id.* at 61-63.  On April 6, 2016, Georgia began treatment at Greater Rochester Orthopedics with Peter N. Capicotto, M.D.  *See id.* at 92.  Dr. Capicotto observed that Georgia's back pain "is made worse with prolonged standing, prolonged sitting, bending, and lifting."  *Id.*; *see also id.* at 89.  He recommended injections,[4] *see*, *e.g.*, *id.* at 91, and referred Georgia to a neurologist, Darrick J. Alaimo, M.D, for a neuromuscular consultation and EMG, *id.* at 84-86.

Dr. Alaimo examined Georgia on April 28, 2016.  *Id.* at 86.  He noted that Georgia's pain in her back and right leg felt "primarily [like] burning with maximum pain intensity of 10/10, with 10 being the worst pain of [her] life."  *See id.*  He found that Georgia had "weakness in her right leg," "pain with walking," and "decreased balance," reporting that she "actually fell down some stairs yesterday [that is, the day before her appointment,] when her right leg gave out."  *See id.*

Although the record includes treatment notes from Dr. Capicotto, Dr. Alaimo, and other providers, none of Georgia's treating physicians submitted a medical source

---

[4] Georgia also tried physical therapy and medication with no success.  *See* Docket Item 13-7 at 86, 91; Docket Item 13-13 at 28.

statement or addressed precisely how Georgia's impairments affected her ability to perform work-related functions.  In fact, the only medical source statement in the record is that of a consultant examiner, Harbinder Toor, M.D.[5]  See Docket Item 13-2 at 26.  On August 12, 2016, Dr. Toor opined that Georgia "has moderate to marked limitation standing, walking, bending, lifting [and] carrying" and that "[s]he has moderate limitation sitting a long time."  Docket Item 13-7 at 73.  The ALJ gave Dr. Toor's opinion "limited weight," finding the terms "moderate" and "marked" to be too "vague and ambiguous for the purposes of determining [Georgia's] specific physical limitations."  Docket Item 13-2 at 26.

Therefore, and notwithstanding Dr. Toor's opinion, the ALJ found that Georgia could perform sedentary work as long as she only "occasionally climb[s] ramps and stairs, balance[s], stoop[s], kneel[s], and crawl[s]," and does not "crouch or climb ladders, ropes[,] and scaffolds" or "work around unprotected heights or on uneven terrain."  See Docket Item 13-2 at 24.  Based on that RFC, the ALJ concluded that Georgia could perform her past relevant work of a data clerk.  See id. at 26.  But no physician or other medical provider opined about any of those specific limitations.  "Although there are many treatment notes in the record, they generally contain bare medical findings and do not address or illuminate how [Georgia's] impairments affect her physical ability to perform work-related functions."  See Wilson, 2015 WL 1003933,

---

[5] There is no evidence the ALJ attempted to solicit a medical source statement from Dr. Capicotto, Dr. Alaimo, or any other medical provider or to recontact Dr. Toor.  While it appears that at least one of Georgia's former treating physicians may no longer have been available, see Docket Item 13-2 at 37, it is not clear to the Court whether that included Dr. Capicotto and Dr. Alaimo.  Regardless, there is no apparent reason why the ALJ could not have recontacted Dr. Toor or solicited a medical opinion from a new consultative examiner.

at *21. The ALJ thus necessarily relied on his own lay judgment to evaluate the medical records and formulate the RFC. It is otherwise "unclear to the Court how the ALJ, who is not a medical professional, came up with this highly specific RFC determination." *See Perkins*, 2018 WL 3372964, at *3 (citation omitted).

Even worse, the RFC conflicts with Dr. Toor's opinion, and the other medical evidence, in significant ways. For example, an RFC of sedentary work—and the job of data clerk, in particular—would require Georgia to sit for a full workday.[6] *See* 209.387-022, Data-Examination Clerk, 1991 WL 671788 (Jan. 1, 2016). But Dr. Toor and Dr. Capicotto both noted that Georgia had difficulty sitting for extended periods of time, *see* 13-7 at 71-73, 92; indeed, Dr. Toor explicitly opined that Georgia had a "moderate limitation sitting a long time," *id.* at 73. Limiting the weight given to that opinion simply because it was too "vague and ambiguous,"[7] *see* Docket Item 13-2 at 26, and finding an RFC to the contrary therefore misses the mark in two ways: the ALJ created an RFC out of whole cloth with no medical opinion to support it, and the ALJ should have at least recontacted Dr. Toor to resolve any vagueness or ambiguity. *See Perkins*, 2018 WL 3372964, at *3 (citing *Jermyn*, 2015 WL 1298997, at *19 ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.")); *Scott*, 2018 WL 4442882, at *4 (finding that

---

[6] "[A] sedentary job is defined as one which involves sitting." *See* 20 CFR §§ 404.1567(a), 416.967(a); *see also* 209.387-022, Data-Examination Clerk, 1991 WL 671788 ("Sedentary work invoves [sic] sitting most of the time, but may involve walking or standing for brief periods of time.").

[7] The ALJ did not discount Dr. Toor's opinion because there were other medical opinions to the contrary, nor did he identify specific medical evidence that conflicted with the opinion. *See* Docket Item 13-2 at 26. Therefore, his giving the opinion "limited weight," *see id.*, was itself error, *see Balsamo*, 142 F.3d at 81.

7

the ALJ erred in failing to recontact physician assistant to clarify "vague" medical opinion).

Along the same lines, the ALJ concluded that Georgia could occasionally balance and stoop, *see* Docket Item 13-2 at 24, despite the fact that at least two physicians found that her right leg sometimes gives out and causes her to fall, *see* Docket Item 13-7 at 71 (Dr. Toor: "Sometimes she loses balance, the right leg gives out."); *id.* at 86 (Dr. Alaimo: "She actually fell down some stairs yesterday when her right leg gave out."). The ALJ did not reconcile that medical evidence with the RFC or with the identified job of a data clerk which requires occasional stooping. *See* 209.387-022, Data-Examination Clerk, 1991 WL 671788.

Simply put, it is not clear to the Court how the ALJ was able to glean from the bare medical data that the RFC would allow Georgia to perform sedentary work—or the job of a data clerk, in particular—despite her impairments. Because the ALJ improperly substituted his own lay opinion in formulating Georgia's RFC, his decision is not supported by substantial evidence and remand is required. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); *Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with

8

many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

The Commissioner argues that notwithstanding the ALJ's criticism of Dr. Toor's opinion as vague and ambiguous, the "very restrictive RFC finding" is actually "consistent with" Dr. Toor's opinion. *See* Docket Item 19-1 at 11. In support of that conclusion, the Commissioner notes that the limitation to sedentary work was "[c]onsistent with moderate to marked limitations in standing and walking" and that the ALJ "accounted for the bending limitation by restricting [Georgia] to occasional stooping and kneeling and no crouching." *Id.* at 11-12.[8] But that does not account for Dr. Toor's finding that Georgia was moderately limited "in sitting a long time," *see* Docket Item 13-7 at 73, clearly at odds with a sedentary job "defined as one which involves sitting," *see* 20 CFR §§ 404.1567(a), 416.967(a). Similarly, the Commissioner asserts that because Georgia's past relevant work would allow her to "shift positions between sitting and standing . . . every 30 minutes," a "moderate limitation in sitting a long time," as found by Dr. Toor, "would not preclude performance of [Georgia's] past relevant work." *See* Docket Item 19-1 at 12. But that *ipse dixit* by the Commissioner simply repeats and

---

[8] The Commissioner also asserts—twice, no less—that the ALJ found that Georgia could "perform sedentary work except that she could lift 10 pounds occasionally and less [than] 10 pounds frequently." *See* Docket Item 19-1 at 10 (citing "Tr. 23"); *see also id.* at 12 (citing same) ("The ALJ also limited [Georgia] to lifting 10 pounds occasionally and less than 10 pounds frequently . . ."). The page cited twice for that proposition might be page 23 of Docket Item 13-2 or it might be page 23 of the underlying record, Docket Item 13-2 at 24; either way, however, the page includes no such language. *See* Docket Item 13-2 at 23-24. Likewise, the Commissioner asserts that the ALJ found that Georgia could "sit for 6 hours in an 8-hour workday, and stand and walk for 2 hours in an 8-hour workday." Docket Item 19-1 at 10 (citing "Tr. 23"). Despite spending considerable time searching for it, this Court could not find that language either.

underscores the same error committed by the ALJ: it is unsupported by any medical opinion or evidence and substitutes a lay conclusion for something requiring a medical provider's expertise.

What is more, if the ALJ thought that he could not assess Dr. Toor's medical source statement because it was "vague and ambiguous," *see* Docket Item 13-2 at 26, then that created a gap in the record—a gap that the ALJ was obligated to fill by recontacting the source, *see Trumpower v. Colvin*, 2015 WL 162991, at *14 (W.D.N.Y. Jan. 13, 2015) (remanding "where the ALJ rejected Dr. Newman's opinion in large part because the ALJ found that it was incomplete [and] the ALJ had a duty to develop the record by re[]contacting Dr. Newman for clarification regarding [the] foundation for [the] opinion") (citations omitted); *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, at *4 (N.D.N.Y. Dec. 30, 2014) (concluding that when a physician's opinion suffered from inconsistencies, conflicts, or ambiguities, "[t]he ALJ ought to have contacted the doctor for clarification on his conclusion").  Thus, to the extent that the ALJ had questions about Dr. Toor's opinion, or found it too vague or unclear, the ALJ should have asked for clarification, not minimized its value.  *See Scott*, 2018 WL 4442882, at *4.  But "the ALJ made no attempt to obtain clarification" of what Dr. Toor meant by "moderate" or "marked," opting instead to discount the opinion and omit its limitations from the RFC. *See id.*  In sum, because Dr. Toor's opinion was the only medical opinion in the record, the ALJ's rejection of the opinion created a gap in the record.  And the ALJ's failure to fill that gap, either by recontacting Dr. Toor or ordering a new examination, is another independent error warranting remand.

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Georgia's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    January 4, 2021
          Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE